UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLARENCE HICKS,

                              Plaintiff,
                                                    9:13-CV-01157
v.                                                  (MAD/TWD)

SCOTT DEGON, et al.,

                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

CLARENCE HICKS
33284-037
Plaintiff *pro se*
Allenwood Low
Inmate Mail/Parcels
P.O. Box 1000
White Dear, PA 17887

HON. RICHARD S. HARTUNIAN              CHARLES E. ROBERTS, ESQ.
Counsel for Defendants                 Assistant U.S. Attorney
Office of the United States Attorney-Syracuse
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. §636(b) and Local Rule 72.3(c).  Plaintiff Clarence Hicks alleges

violations of his constitutional rights arising out of his confinement at Ray Brook Federal

Correctional Institution ("FCI Ray Brook"). (Dkt. No. 18.) Currently pending before the Court

is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6), and alternatively, for summary judgment pursuant to Federal Rule of Civil

Procedure 56(b). (Dkt. No. 35.) For the reasons set forth below, the Court recommends that

Defendants' motion to dismiss be granted and Plaintiff's Amended Complaint be dismissed

without prejudice.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff commenced this action on September 17, 2013, naming Lieutenant Degon,

Warden Hudson, and Captain Adams as Defendants. (Dkt. No. 1.) Plaintiff filed an Amended

Complaint on December 11, 2013. (Dkt. No. 10.) Plaintiff's application to proceed *in forma

pauperis* was granted by this Court on February 6, 2014. (Dkt. No. 11 at 2.)[1] Upon initial

review, the Court dismissed with prejudice Plaintiff's claims that Defendant Degon was verbally

abusive and placed false disciplinary charges against him. *Id*. at 12. Plaintiff's retaliation and

conspiracy claims against Defendants Degon, Adams, and Hudson were dismissed without

prejudice. *Id*. In light of his *pro se* status, the Court afforded Plaintiff the opportunity to file a

second amended complaint. *Id*.

Plaintiff filed a second Amended Complaint on April 17, 2014, which is the operative

complaint in this action. (Dkt. No. 18.) Plaintiff alleges that on June 17, 2013, Defendant

Degon improperly confined Plaintiff in the Special Housing Unit ("SHU") pending the outcome

of an investigation into allegations that Plaintiff made a "sexual proposal" to a corrections

---

[1] Page references to documents identified by docket number are to the page number assigned by the Court's
CM/ECF electronic docketing system.

officer. *Id.* at 6.  Plaintiff alleges he was not provided with formal notification of the reason for his administrative SHU confinement, nor did he receive periodic reviews of his detention status. *Id.* at 7-8.  On September 15, 2013, Plaintiff was formally charged with misconduct towards staff. *Id.* at 6-7.  Plaintiff was found guilty at the disciplinary hearing on September 18, 2013, and sentenced to 60 days confinement in the SHU, 54 days recommended loss of good time, and six months loss of privileges. *Id.* at 7.  Plaintiff seeks compensatory and punitive damages. *Id.* at 12.

On November 26, 2014, this Court found that Plaintiff's due process claim against Defendants Hudson and Adams arising from his SHU confinement on "investigative status" survived *sua sponte* review and required a response from Defendants.  (Dkt. No. 23 at 6-7.)  The Court dismissed all claims against Defendant Dagan, including Plaintiff's claim for retaliation, pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b).  *Id.* at 5.  The Court also *sua sponte* dismissed Plaintiff's claims for Eighth Amendment conditions of confinement, denial of access to courts, and violation of due process at the disciplinary hearing pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b).  *Id.* at 4-12.

In lieu of answering Plaintiff's Amended Complaint, Defendants Adams and Hudson now move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 35.)  Defendants argue that Plaintiff's Amended Complaint must be dismissed because Plaintiff failed to exhaust his administrative remedies before commencing this action.  (Dkt. No. 35-1 at 3-6.)  Defendants also claim that Plaintiff has not stated an actionable due process claim because (1) Plaintiff failed to allege personal involvement of Defendants Adams and Hudson; (2) a *Bivens* action cannot be maintained against a federal employee in his

official capacity, and is barred by sovereign immunity, and (3) Defendants Adams and Hudson are protected by qualified immunity. *Id.* at 6-22. Plaintiff opposed the motion. (Dkt. No. 37.) Defendants have filed a reply. (Dkt. No. 38.) Plaintiff has filed a sur-reply. (Dkt. No. 39.) The Court reaches only the exhaustion issue, because it is dispositive.

## II.     LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation

marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Additionally, although a court considering a motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the complaint includes any written instrument attached to it as an exhibit and any statement or documents incorporated into it by reference. *Paulemon v. Tobin*, 30 F.3d 307, 308 (2d Cir. 1994). The court may also consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had in his possession or had knowledge of, and upon which he relied in bringing this suit. *Mills v. Garvin*, No. 99 CIV 6032 CM, 2001 WL 286784, at *3, 2001 U.S. Dist. LEXIS 3333, at *7 (S.D.N.Y. Mar. 2, 2001) (citing *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).[2]

---

[2] The Court will provide Plaintiff with a copy of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* at 112 (citation omitted).

In this case, Plaintiff has attached to his Amended Complaint letters and copies of his various administrative requests and appeals related to his SHU confinement. (Dkt No. 18-1.) The moving Defendants have attached to their motion the Declaration of Cheryl Magnusson, a legal assistant for the Bureau of Prisons ("BOP"), which itself has attached to it copies of documents retrieved through the BOP's computer database, known as "SENTRY." (Dkt. No. 35-2.) These documents include copies of Plaintiff's: (A) Inmate Profile; (B) Sentence Monitoring Computation Data; (C) Inmate Admission/Release History; (D) Administrative Remedy Generalized Retrieval History; (E) Administrative Remedy, Case Number 729319-R1, A1, and Response; (F) Administrative Remedy, Case Number 742614 F1, A1 and Response; (G) Administrative Remedy, Case Number 752333 F1, and Response; (H) Inmate Quarters History; (I) Inmate Discipline Data, Chronological Disciplinary Record; (J) Discipline Hearing Officer Packet, Incident Report No. 2492663; (K) Special Housing Unit Records; (L) Special Housing Unit Reviews; (M) Administrative Detention Order (September 18, 2013); and (N) BOP Program Statement 5270.10 Special Housing Units. (Dkt. Nos. 35-3 - 35-7.)

Here, "[b]ecause the exhaustion issue is an integral part of a prisoner's claim, the Court may refer to materials outside of the complaint on a 12(b)(6) motion in determining whether a plaintiff exhausted." *Smart v. Good*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) (collecting

cases); *see also Willis v. Nally*, No. 9:04-CV-1176, 2009 WL 1044595, at *4, 2009 U.S. Dist. LEXIS 33295 (N.D.N.Y. Apr. 20, 2009) (documents related to exhaustion are "integral" to a plaintiff's claim and can be considered by the court deciding a Rule 12(b)(6) motion). Moreover, Plaintiff alleges in his Amended Complaint that he utilized the administrative remedy process and his administrative requests were "denied at the institutional level on the merits, but denied as time barred and went unresponded [sic] at the Regional and Central Offices. (Dkt. No. 18 at 6.) Accordingly, the Court will only consider documents related to Plaintiff's administrative remedies regarding his SHU confinement for the purposes of addressing Defendants' motion to dismiss.

## III. ANALYSIS

Defendants argue that this action must be dismissed because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 35-1 at 3-6.) Defendants are correct.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA applies equally to *Bivens* claims. *Id*. at 524.

A plaintiff's failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available remedies in order to state an actionable civil rights claim. *Id*. at 211-17. This "is not to say that failure to exhaust cannot be a basis for

dismissal for failure to state a claim." *Id*. at 216.  If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim.  *Id*. at 215-16.

In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  The administrative remedy process provided to federal inmates by the BOP consists of four steps.  28 C.F.R. § 542, Subpt. B.

First, an inmate must informally present an issue of concern to staff, who shall attempt to resolve the issue before that inmate submits a Request for Administrative Remedy.  28 C.F.R. § 542.13(a).  Second, if the inmate is dissatisfied with the informal resolution of his issue of concern, the inmate must submit a formal written Administrative Remedy Request on a BP-9 form to the Warden within 20 days of the date of the occurrence of the event that is the basis for the remedy request.  28 C.F.R. § 542.14(a).  Third, an inmate who is dissatisfied with the Warden's response may submit an appeal on a BP-10 form to the Regional Director within 20 days of the Warden's signed response.  28 C.F.R. § 542.15(a).  Fourth, an inmate who is dissatisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel's Office at the Central Office of Appeals within 30 days of the Regional Director's signed response.  *Id*.  The process permits extensions of the time limits when the inmate demonstrates a valid reason for the delay.  *Id*.  Only upon completion of all of the required steps of this prescribed process does a federal inmate fully exhaust available administrative remedies.  *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Johnson v. Rowly*, 369 F.3d 40, 45 (2d Cir. 2009).

Importantly, "[f]iling an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirements. *Woodford*, 548 U.S. at 83-84. Failure to timely exhaust administrative remedies results in procedural default, which precludes judicial review of the defaulted claim unless the inmate is able to justify the failure to exhaust. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). Moreover, an inmate can no longer claim that partial exhaustion of administrate remedies is sufficient because prison officials have notice of his claim. *Macias*, 495 F.3d at 43.

In this case, Defendants argue that two administrative grievances, Numbers 742614 and 752333, relate to Plaintiff's claim of due process violations by Defendants Hudson and Adams (that they did not give him proper notice of this basis for his conferment in the SHU, and that he was not given periodic review of his administrative detention status). (Dkt. No. 35-1 at 3-6.) After carefully examining the record, the Court finds that Plaintiff has failed to exhaust his administrative remedies challenging his placement in the SHU as required by the PLRA, and his action under *Bivens* is foreclosed.

## A.      Administrative Remedy Number 742614

On July 1, 2013, Plaintiff informally presented an issue of concern to FCI Ray Brook regarding his placement in the SHU. (Dkt. No. 18-1 at 21-22.) Plaintiff claimed that "[p]er SIS Lieutenant Degon, I've been detained since June 17, 2013 on allegations that I made a lascivious proposal to female staff member Ms. Seymour." *Id*. at 21. Counselor, "D. Parker" responded that he was "unable to resolve at this level" and Plaintiff was issued a BP-9 form. *Id*. On July 12, 2013, Plaintiff filed a Request for Administrative Remedy to the Warden, challenging his placement in the SHU on June 17, 2013, "under allegations of sending a letter to an officer Seymour, per Lt. Degon." *Id*. at 23. On July 24, 2013, Defendant Hudson denied Plaintiff's

challenge that he had been wrongfully placed in the SHU. *Id.* at 25. That rejection notice advised Plaintiff that he had 20 calendar days from the date of the Warden's Response to submit a Regional Appeal to the Northeast Regional Director. *Id.*

On August 15, 2013, Plaintiff submitted a Regional Appeal. (Dkt. No. 35-3 at 22.) That submission was rejected on August 19, 2013, however, because all four pages of the appeal form were not legible. *Id.*

On August 19, 2013, the Central Office received Plaintiff's Appeal, Number 742614, dated August 12, 2013. (Dkt. No. 18-1 at 26.) The Central Office rejected that Appeal on August 29, 2013, because Plaintiff submitted "to the wrong level." (Dkt. No. 35-4 at 14.) The Rejection Notice instructed Plaintiff that he needed to correct the issues addressed in the Region's Rejection Notice and resubmit his appeal to the Regional Office in proper form. *Id.*

Plaintiff resubmitted his Regional Appeal, which was received on September 4, 2013. (Dkt. No. 35-3 at 23.) However, that submission was rejected on September 5, 2013, because it was untimely filed. *Id.*[3] Plaintiff was advised that he needed to provide staff verification for the reasons the submission was untimely filed. *Id.*

On September 23, 2013, Plaintiff resubmitted his Regional Appeal. *Id.* at 24. That submission, however, did not include staff verification as to why it was not timely filed by August 29, 2013. *Id.* Accordingly, that submission was also rejected. *Id.*

**B.      Administrative Remedy Number 752333**

The second grievance which relates to Plaintiff's claim is Number 752333. Plaintiff submitted a Request for Administrative Remedy to the Warden's Office at FCI Ray Brook, dated

---

[3] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Index as received." 28 C.F.R. § 542.18. Plaintiff's appeal to the Regional Office was due August 29, 2013. (Dkt. No. 35-3 at 23.)

September 13, 2013, appealing the decision to his "BP8, August 16, 2013." (Dkt. No. 18-1 at 33; Dkt. No. 35-4 at 17-18.) In that submission, Plaintiff alleged that Lieutenant Degon placed him in the SHU for ulterior motives and personal reasons. (Dkt. No. 18-1 at 33.) Plaintiff further alleged that the allegations made against him were "a lie," and that there was "no investigation" being conducted. *Id.* For relief, Plaintiff requested immediate release from the SHU. *Id.* On October 16, 2013, the Warden denied that request and advised Plaintiff that he could submit an appeal to the Northeast Regional Office within 20 days of the decision. (Dkt. No 18-1 at 37; Dkt. No. 35-4 at 19.) Plaintiff did not appeal to the Regional Office. (*See* Dkt. No. 35-3.)

### C. Plaintiff's Failure to Exhaust Administrative Remedies

Here, the Court finds that Plaintiff failed to exhaust his administrative remedies regarding his due process claims against Defendants Adams and Hudson arising from his SHU confinement on "investigative status." *See Macias*, 495 F.3d at 44; *Woodford*, 548 U.S. at 93.

Plaintiff's failure to exhaust, however, does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a plaintiff has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).[4]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if administrative remedies were available,

> the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

---

[4] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amado v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

*Hemphill*, 380 F.3d at 686 (citations omitted).

Third, if the remedies were available and defendant did not forfeit, and was not estopped from raising, the non-exhaustion defense, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).

Here, there is no dispute that the administrative process was available to Plaintiff. Indeed, Plaintiff admits that he pursued those remedies "to apprise Defendants Hudson, Adams and the BOP's Regional and Central offices to Defendant Degon's abusive behavior in his power." (Dkt. No. 18 at 6.) Moreover, Plaintiff concedes that his appeals "were denied at the institutional level on the merits, but denied as time barred and went unresponded [sic] at the Regional and Central office levels." *Id.*

Defendants preserved the exhaustion defense by asserting it in this motion. (Dkt. No. 35-1); *Jones*, 549 U.S. at 216; *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010). There is no evidence in the record that Defendants' conduct estops them from asserting the exhaustion defense. *Cf. Ziemba v. Wezner*, 366 F.3d 161, 162-64 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison).

Read broadly, Plaintiff's opposition papers argue that special circumstances justify his failure to exhaust before commencing this action. (Dkt. Nos. 37, 39.) Specifically, Plaintiff

argues that "[i]rregardless of whether the filings were found to be timely or not, it wasn't Plaintiff's fault. He had no control over actually placing his mail in the mail box. He gave the filings to SHU staff that then possessed the onus to mail them." (Dkt. No. 37 at 3.) However, in order to defeat the exhaustion defense on "special circumstances" grounds, such circumstances must be "plausibly alleged." *Hemphill*, 380 F.3d at 686.

Here, Plaintiff does not identify the SHU staff to whom he gave the unspecified filings, nor does he provide any copies of the filings or allege any details that would support his "special circumstances" exhaustion defense. (*See* Dkt. No. 37 at 3.) Pursuant to 28 C.F.R. § 542.18, a "Request or Appeal is considered filed on the date it is logged into the Administrative Index as received." As discussed above, Plaintiff's Regional Appeal, Number 742614, was received September 4, 2013, and rejected as untimely the next day. (Dkt. No. 35-3 at 23.) Plaintiff was advised to provide staff verification for the reasons the submission was late. *Id.* Plaintiff's Regional Appeal, Number 742614 was rejected again on September 23, 2013, because Plaintiff failed to provide staff verification as to why the appeal was not timely filed on August 29, 2013. *Id.* Moreover, the record evidence demonstrates that Plaintiff's mail was being sent and received during the relevant time period. (Dkt. No 18-1 at 26, 29-30.)[5]

Plaintiff attaches to his sur-reply copies of Regional Administrative Remedy Appeal, Number 754087, and Central Office Administrative Remedy Appeal, Number 754087, as further evidence "substantiating what [Defendants] said I didn't do." (Dkt. No. 39 at 1-4.) First, as previously discussed, Plaintiff's Central Office Administrative Remedy Appeal, Number 742614, was rejected by the Central Office because Plaintiff had failed to cure the problem with

---

[5] For example, Plaintiff's submission to the Central Office, Number 742614, was dated August 12, 2013, and was stamped "received" August 19, 2013. (Dkt. No. 18-1 at 26.) Plaintiff's handwritten letter to Counselor Parker, dated August 18, 2013, requesting forms "BP 8, 9, 10, and 11" includes a handwritten notation that the requested forms were "provided" August 23, 2013, signed by "D. Parker." *Id.* at 29-30.

his Regional Appeal before submitting it to the Central Office. (Dkt. No. 35-4 at 14.) Second, Plaintiff's Regional Administrative Appeal, Number 754087, relates to Plaintiff's disciplinary hearing. (Dkt. No. 39 at 3; Dkt. No. 35-3 at 25-26.) Plaintiff's due process claim at the disciplinary hearing, however, was *sua sponte* dismissed by this Court on November 26, 2014. (Dkt. No. 23 at 7-9.)

Generally, the "special circumstances" doctrine is applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterprets the statutory requirements of the appeals process. *Giano*, 380 F.3d 676. Here, there was no reasonable misunderstanding of the exhaustion procedures, and there were no threats to render the remedies functionally unavailable. Plaintiff is not excused from failing to complete all steps of the administrative remedies which were available to him. *See, e.g.*, *Gibson v. Goord*, 280 F.3d 221, 223 (2d Cir. 2002) (affirming district court's dismissal of prisoner's complaint for failure to exhaust where the inmate had filed a "level one grievance," but had not pursued the available remedy of filing a "level two grievance"); *see also Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 422-23 (2d Cir. 2009) (rejecting Plaintiff's argument that the BOP either inadvertently or intentionally failed to mail his final appeal where there was no copy of the BP-11 appeal that he allegedly mailed or any follow-up correspondence with the BOP).

Finally, the Court finds no merit to Plaintiff's argument that his filings show his "due diligence in trying to get the attention of higher officials to assist him in the unconstitutional matter that was ongoing against him." (Dkt. No. 37 at 3.) The PLRA requires "proper exhaustion" which means "using all steps that the agency holds out, and doing so properly." *Woodford*, 548 U.S. at 90.

Therefore, the Court finds Plaintiff's failure to exhaust is not excused. Accordingly, the Court recommends granting Defendant's motion to dismiss and dismissing Plaintiff's Amended Complaint without prejudice. *See Morales v. Mackalm*, 278 F.3d 126, 128 (2d Cir. 2002) ("[I]f a district court dismisses a prisoner's complaint for failure to exhaust administrative remedies, it should do so without prejudice."); *Neal v. Goord*, 267 F.3d 116 (2001).

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 35) be **GRANTED** and that the Amended Complaint (Dkt. No. 18) be **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions in *Mills v. Garvin*, No. 99 CIV 6032 CM, 2001 WL 286784, 2001 U.S. Dist. LEXIS 3333 (S.D.N.Y. Mar. 2, 2001) and *Willis v. Nally*, No. 9:04-CV-1176 (DNH/RFT), 2009 WL 1044595, 2009 U.S. Dist. LEXIS 33295 (N.D.N.Y. Apr. 20, 2009), in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: November 30, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

KeyCite Yellow Flag - Negative Treatment

**Called into Doubt by** Perez v. Blot, S.D.N.Y., April 10, 2002

2001 WL 286784
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Kevin MILLS, Plaintiff,

v.

Henry GARVIN, Superintendent, Mid–Orange
Correctional Facility, Glenn S. Goord, Commissioner
of the Department of Correctional Services;
Sarah Hornbeck, Deputy Superintendent of
Administration, Mid–Orange Correctional
Facility, H. Devries, Nurse, M. Stanfield,
Nurse, N. Whiting, Nurse, M. Stanfield, Nurse
Administrator, Doctor Khanyile, Doctor Floresca,
and Nurse Debbie Kaval, The Medical Staff at
Mid–Orange Correctional Facility, Defendants.

No. 99 CIV 6032 CM. | March 2, 2001.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

MCMAHON, J.

**\*1** Pro se plaintiff Kevin Mills brought this action under 42 U.S.C. § 1983 alleging violations of his rights under the Eighth Amendment to the U.S. Constitution for inadequate medical treatment while incarcerated at the Mid–Orange Correctional Facility. Defendants have moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

For the reasons stated below, defendants' motion to dismiss is granted.

### PROCEDURAL BACKGROUND

Plaintiff filed the instant action on June 1, 1999, in Part One of the Southern District of New York. On July 29, 1999, Chief Judge Thomas P. Griesa issued an order dismissing plaintiff's Complaint for failure to allege sufficient facts showing how defendants were deliberately indifferent to his medical needs, and granted plaintiff leave to amend his Complaint. On

September 21, 1999, plaintiff filed an amended Complaint. Chief Judge Griesa found the amended Complaint to be deficient and directed plaintiff to file a second amended Complaint on October 28, 1999. Plaintiff did so on December 10, 1999, and this case was assigned to me on May 11, 2000.

On August 1, 2000 plaintiff filed an application to the court for appointment of counsel, which I referred to the Hon. Lisa Smith for determination. She denied plaintiff's motion without prejudice to reconsideration after sufficient facts were established to permit the court to assess the validity of plaintiff's claims. Defendants Garvin, Goord and Hornbeck were served plaintiff's Complaint on August 16, 2000.

On October 23, 2000, defendants made a motion to dismiss plaintiff's Complaint for failure to state a claim on which relief can be granted under Fed.R.Civ.P. 12(b)(6). I conducted a telephone conference with the parties on November 3, 2000. I explained the procedural posture of the case to plaintiff and directed him to respond to the motion within 30 days. Plaintiff has failed to do so. He is now more than two months in default.

### FACTUAL BACKGROUND

Plaintiff claims that on August 14, 1998, he slipped on a wet surface and twisted his back while unloading paint drums from a truck. He landed on his right side, and felt pain in his left ankle, leg, right hip, and lower back from the fall. Corrections Officer Kennedy, who was supervising the work detail, did not offer assistance. The Medical Staff did not give Kennedy any instructions for administering first aid; they told him to bring plaintiff to the Infirmary. Plaintiff was forced to wait for the bus that transports inmates from the work site to the prison. Nobody gave him any assistance getting on or off the escort bus, and he was forced to walk approximately three city blocks to the Infirmary.

When plaintiff arrived at the Infirmary, Nurse Henry put ice on his leg and gave him a cane for walking. Nothing was done for his back pain. The next day, plaintiff returned to the Infirmary with severe pain in his leg, knee, hip and back. He saw a Nurse Debbie who said that there was not much she could do until the doctor examined him. Plaintiff was excused from work pending the doctor's examination.

**\*2** On October 19, 1998, plaintiff wrote to Glenn Gourd, the Commissioner of the Department of Correctional Services.

The letter, attached to plaintiff's second amended Complaint, stated:

> I am writing you in hopes of finding a solution in an important matter, my health. I have been having some problems with the medical staff here at Mid–Orange Correctional Facility. I have been trying to receive medical attention for my back and legs which have been bothering me for sometime now, yet I cannot seem to get any proper medical care. I've also been trying to get contact lens as I have bad vision and am allergic to the bymetals in eyeglass frames.

> My problems began on or around June 1998. I find myself unable to receive any attention towards the above mentioned problems. I've written to Ms. M. Stanfield, N.A. at this facility and then to DSA S. Hornbeck, and Ms. Kjellander, Grievance, and on October 5, 1998, I wrote Superintendent H.Garvin and as of date I have not heard from him and all the others mentioned keep passing the buck back and forth.

> I pray that this letter may help me in some way as my medical problems aren't getting any better and the time it is taking to address those problems are not right under any conditions. I am now walking with a cane on a daily basis and have to tape up the arms on my glasses to avoid a rash on my face.

> I thank you for your time, concern and attention in this matter and will appreciate any help that you may be able to render in this matter.

(Attach. to Pl. Amend. Compl.)

On or about November 6, 1998, Lester N. Wright, Associate Commissioner/Chief Medical Officer of the Department of Correctional Services wrote to plaintiff. His letter stated, in pertinent part:

> Commissioner Goord has referred your letter of October 19, 1998, to me for response.

> The Division of Health Services has investigated your concerns with the health care staff at Mid–Orange Correctional Facility. It is my understanding that you will be receiving your contact lenses in the near future. Further, with regard to your complaint about your back and legs, I understand you are in the process of being referred out for special studies. Approval for this is still pending.

> I suggest that you continue to consult with the health care staff using existing sick call procedures. I am sure they will make every effort to address your needs.

(Id.)

Plaintiff wrote back to Wright on January 19, 1999, and to Superintendent of the Mid–Orange Correctional Facility Henry Garvin (on a date unknown) again asking for help. He received a letter back from C. Kjellender, "Supervisor of IGP" who told him that he would be seeing the optometrist on the "next call out" and that he should "discuss the possibility of physical therapy with [the facility doctor]" at his next appointment. (Id.)

Plaintiff alleges that he suffered without meaningful care or concern until January 26, 1999, when he was taken out of the facility for an MRI. He had a second MRI on June 23, 1999. Plaintiff continues to experience headaches and pain up and down his entire left side from his lower spine, hip and leg.

## DISCUSSION

 **\*3** In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of plaintiff's allegations as true, and only dismiss the complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957). While complaints brought by pro se prisoners alleging civil rights deprivations must be liberally construed, *see, e.g., Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir.1974), "pro se complaints consisting of more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fail to state a claim under Rule 12(b)(6)." *Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

Additionally, although a court considering a motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the complaint includes any written instrument attached to it as an exhibit and any statements or documents incorporated into it by reference. *Paulemon v. Tobin,* 30 F.3d 307, 308 (2d Cir.1994). The court may also consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had in [his] possession or had knowledge of an upon which [h]e relied in bringing this suit. *Cortec Indus. V. Sum Holding,*

L.P., 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,*503 U.S. 960 (1992).

### 1. Failure to Exhaust Administrative Remedies

Defendants argue that the complaint should be dismissed in its entirety because the plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.1997e(a). That section provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted.

*Id.* Administrative remedies were available at Mid–Orange. (Def. Mem. in Supp. of Mot. to Dismiss at 7.) In his Complaint, plaintiff indicated (by checking the box) that he had presented the facts relating to his claim to the state prisoner grievance procedure. To demonstrate this, plaintiff refers the court to the multiple letters he sent to prison officials requesting further treatment. But letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA. There is no indication in the Complaint that plaintiff went through the prescribed grievance procedure before bringing this lawsuit.

Under these circumstances, the Complaint would ordinarily be dismissed without prejudice to refiling following the plaintiff's exhaustion of such procedures. 42 U.S.C. § 1997e(a); *see also Midgette v. Doe,* No. 96 Civ. 6790, 1997 WL 634280, at *1 (S.D.N.Y. Oct. 15, 1997) (dismissing without prejudice a prisoner's § 1983 suit alleging a failure to protect pursuant to the PLRA for lack of exhaustion of "the available administrative remedies within the New York State Department of Correctional Services."); *Melo v. Combes,* No. Civ. A. 97–0204, 1998 WL 67667 (S.D.N.Y. Feb. 18, 1998) (noting same). However, if the underlying claim has no merit, this court may dismiss it with prejudice, despite the failure to exhaust. 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."); *Melo,* 1998 WL 67667 at *3 (dismissing action even though plaintiff failed

to exhaust administrative remedies because the underlying claim was barred under the Eleventh Amendment). Here, the Complaint should be dismissed with prejudice, because, reviewing the facts as plaintiff presents them, he does not state a claim for recovery for violation of his Eighth Amendment rights.

**\*4** Recovery under the Eighth Amendment based on inadequate medical care is limited to those cases in which a prisoner can establish "deliberate indifference to serious medical needs."*Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The test to determine liability contains both an objective and subjective element: a prison official violates the Eighth Amendment when the alleged deprivation is objectively sufficiently serious and when the prison official acted with a sufficiently culpable state of mind. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Hudson v. McMillan,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In order to prevail in demonstrating a culpable state of mind, the plaintiff must show both: (1) that the defendant had actual knowledge of a substantial risk of harm to the plaintiff; and (2) that the defendant disregarded that risk by failing to take reasonable measures to abate the harm. *See Farmer,* 511 U.S. at 837; *Candelaria v. Coughlin,* 1997 WL 171256, *10 (S.D.N.Y. Apr. 10, 1997).

Assuming, *arguendo,* that inattention to plaintiff's chronic back, hip and leg pain was sufficiently serious to qualify as a "substantial risk of harm" (itself a dubious proposition), the Complaint fails to allege any facts that could prove defendants' culpable state of mind. Specifically, it appears that defendants did not disregard any risks or fail to take reasonable measures to abate the harm. *See Farmer,* 511 U.S. at 837. Plaintiff received painkillers, salve, and a walking cane. He was issued a medical excuse pass on September 14, 1998, that exempted him from afternoon work detail for two weeks. Moreover, he was referred to an outside hospital for MRI studies on two separate occasions.

Plaintiff's allegations demonstrate only that he disagrees with the medical care provided to him. At most, he alleges negligence, which is not actionable under § 1983. *Veloz v. New York,* Civ. A. 98–0567, 1999 WL 27526 (S.D.N.Y. Jan. 21, 1999). The facts alleged do not support the type of egregious lack of medical care which would establish a claim of "deliberate indifference" to serious medical needs on the part of the defendants and rise to the level of a constitutional tort.

**2. No Responsive Papers**

Finally, plaintiff had thirty days to respond to defendant's motion to dismiss-until December 4, 2000. As of today, March 2, 2000, plaintiff has failed to do so. This court has considered the defendant's motion on the merits, but it is clear that defendant would also be entitled to a judgment of default.

Plaintiff's Complaint is dismissed, and the Clerk is directed to close the case.

This constitutes the decision and order of the Court.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 286784

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1044595
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Dexter WILLIS, Plaintiff,

v.

Michael NALLY, et al., Defendant.

No. 9:04–CV–1176.   |   April 20, 2009.

West KeySummary

1   **United States**
    👉 Exhaustion of remedies

    Inmate failed to exhaust available administrative
    remedies regarding his *Bivens* claim that
    Federal Correctional Institute (FCI) staff were
    deliberately indifferent to inmate's medical
    needs. The records revealed that inmate filed
    twenty-three administrative remedies during his
    incarceration with the United States Bureau
    of Prisons (BOP), though not one of them
    concerned inmate's claim of medical indifference
    on the part of FCI staff. U.S.C.A. Const.Amend.
    8; Civil Rights of Institutionalized Persons Act,
    § 7, 42 U.S.C.A. § 1997e.

    Cases that cite this headnote

**Attorneys and Law Firms**

Dexter Willis, Brooklyn, NY, pro se.

Hon. Andrew T. Baxter, Office of the United States Attorney
—Syracuse, Acting United States Attorney for the Northern
District of New York, William H. Pease, Esq., Assistant
United States Attorney, of Counsel, Syracuse, NY, for
Defendants.

**DECISION and ORDER**

DAVID N. HURD, District Judge.

**\*1**  DEXTER WILLIS, Plaintiff,

—v.—

MICHAEL NALLY; MICHAEL RAY; CHESTER;
SULLIVAN; MARY VALLEY; RICHARD GUINEY; REX
DASCHLE; LEPO; ROY; E. SWEATT; D. MARIN; USA,
Defendants.

Plaintiff brought this civil rights action pursuant to 42 U.S.C.
§ 1983. On March 13, 2009, the Honorable Randolph F.
Treece, United States Magistrate Judge, advised, by Report–
Recommendation, that defendants' motion to dismiss be
granted, and the complaint be dismissed in its entirety. No
objections to the Report–Recommendation were filed.

Based upon a careful review of entire file and the
recommendations of the Magistrate Judge, the Report–
Recommendation is accepted in whole. *See* 28 U.S.C. 636(b)
(1). Accordingly, it is

ORDERED that defendants' motion to dismiss is GRANTED
and the complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

**REPORT–RECOMMENDATION and ORDER**

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Dexter Willis brings this Complaint, pursuant
to 42 U.S.C. §§ 1983, 1985, *Bivens v. Six Unknown Agents of
Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29
L.Ed.2d 619 (1971), and the Federal Tort Claims Act (FTCA),
28 U.S.C. §§ 1346, 2671 *et seq.,* alleging that (1) his removal
from a prison job after receiving a false incident report
violated his due process rights because he never received a
hearing on that report, Dkt. No. 5, Am. Compl. at ¶¶ 18–29
& 44; (2) Defendants conspired to retaliate against Plaintiff
by filing a false incident report against him, which led to his
removal from a prison job with UNICOR,[1] *id.* at ¶¶ 43 &
53; (3) the Federal Correctional Institute (FCI) Ray Brook
staff did not provide him adequate medical care, prescribed
him medicine that caused him physical harm, and refused his
requests to see an outside specialist about his abdominal pain
in violation of his Eighth Amendment rights and the FTCA,
*id.* at ¶¶ 31–33, 37–42, & 45; and (4) Defendants conspired
to deprive him of the medical attention he needed in violation
of 42 U.S.C. § 1985, *id.* at ¶¶ 43, 46, 48–49, & 52.[2]

Defendants Michael Ray, Mary Valley, and Richard Guiney move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [3] Dkt. No. 28. Plaintiff has not filed a response in opposition to the Motion. Originally, Plaintiff's response was due by April 8, 2008. Dkt. No. 28. By an Order dated June 11, 2008, this Court *sua sponte* extended Plaintiff's time to respond to the Defendants' Motion until July 15, 2008, but that Order was returned to the Court as undeliverable. Dkt. Nos. 29–30. The Court then issued an Order directing Plaintiff to submit his current address to the Court within thirty (30) days of that Order lest his Complaint be dismissed for failure to keep his address updated pursuant to the Local Rules of the Northern District of New York. Dkt. No. 31. Thereafter, a Status Report was filed by the Defendants' attorney indicating that Plaintiff had previously sent Defendants a letter informing them of his new address in Brooklyn, New York; however, Plaintiff never sent the Court an updated address. Nonetheless, Plaintiff's address was duly updated, and on October 9, 2008, the Court directed Defendants to re-serve their Motion to Dismiss on Plaintiff at his Brooklyn address. The following day a Certificate of Service was filed indicating that Plaintiff was served via the post. Dkt. Nos. 33–34. That same Order directed Plaintiff to file and serve any opposition to the Defendants' Motion on or before November 14, 2008, and warned Plaintiff that his failure to respond **"may, if appropriate, result in the granting of Defendants' Motion, in which [case] there will be no trial."** Dkt. No. 33, Order at p. 2 (emphasis in original) (citing N.D.N.Y.L.R. 7.1(b)(3)). To date, Plaintiff has not responded to the Defendants' Motion, and the Court notes that it has not received any correspondence whatsoever from the Plaintiff since July 20, 2007. *See generally* Dkt. Rep.

**\*2** For the reasons that follow, it is recommended that the Defendants' Motion be **granted**.

## I. BACKGROUND

In accordance with the applicable standard to be applied when considering a Motion to Dismiss, the following facts are derived from the Plaintiff's Amended Complaint, which will be construed in a light most favorable to Plaintiff, the non-moving party.

On or about April 23, 2003, Plaintiff reported severe abdominal pains to his work supervisor, Defendant Richard Guiney, who granted Plaintiff's request to leave work and go to the medical department. Am. Compl. at ¶ 19. During that time, Plaintiff was suffering from Irritable Bowel Syndrome, which caused him severe abdominal pains. *Id.* at ¶ 18. Upon arrival at the medical department, Plaintiff was refused medical treatment by Defendant D. Marin because no prior call had been placed informing the medical department of Plaintiff's impending visit. *Id.* at ¶ 20. Plaintiff then went to his unit and reported the situation to the unit officer, Debra Wilcox. [4] Wilcox called the medical department to see if Defendants D. Marin and E. Sweatt were able to see Plaintiff and informed them that Plaintiff appeared to be in severe pain. *Id.* at ¶ 22. Wilcox later told Plaintiff that someone in the medical office would call her back if Plaintiff could be seen by one of the physicians. *Id.*

Shortly thereafter, Defendant Mary Valley, Plaintiff's work supervisor, called the unit to see if Plaintiff was there; Wilcox informed Valley that Plaintiff was in the unit and awaiting a call from the medical department to see if he would or would not be seen by a physician. *Id.* at ¶ 23. However, the medical department never called back in response to Plaintiff's request to see a physician. Defendant Valley then wrote an Incident Report against the Plaintiff for being in an unauthorized area and lying to a staff member, which was served on Plaintiff at 8:20 p.m. on that same date, April 23, 2003. *Id.* at ¶ 24. The Incident Report, which Plaintiff attached to the Amended Complaint, states that

> [a]t approximately 2:45 p.m., Rex Dashnaw informed me that Inmate Willis, Dexter, Reg. No. 18380–057, was in his unit. I spoke with Officer Deborah Wilcox and she confirmed that he was in the unit. The inmate told her that he told Richard Guiney that he was going to the unit to get his medication. Mr. Guiney stated to me that Inmate Willis told him when he left UNICOR that he was going to Medical. Mr. Guiney called Health Services and learned that Inmate Willis did not report to Health Services. Inmate Willis provided false information to Mr. Guiney and went to the unit without authorization.

Am. Compl., Incident Rep., dated Apr. 22, 2003. [5]

On the night of April 23, 2003, Plaintiff noticed that his UNICOR job had been changed on the callout list, a list

that indicates when an inmate has been reassigned to a new job. *Id.* at ¶ 26. On April 24th, Plaintiff asked his Unit Manager, Defendant Sullivan, about the Incident Report, who responded that it had been taken care of and he need not worry about the incident or his job in UNICOR. *Id.* at ¶ 28. Plaintiff never received a hearing on the Incident Report, but his employment with UNICOR was nonetheless terminated. Defendants Mr. Lepo, Mr. Roy, and Mr. Chester placed a memorandum in Plaintiff's file indicating that Plaintiff was not to be employed by UNICOR within the Federal Bureau of Prisons (BOP), which was agreed to by Defendants Nally, the Warden, and Mickey E. Ray. *Id.* at ¶ 29.

**\*3** While at FCI Ray Brook, between August 25 and October 25, 2003, Plaintiff was seen by several medical physicians for his severe abdominal pains and cramps, but he was never properly diagnosed for his illness. *Id.* at ¶ 30. Plaintiff complained about his pain to the medical staff and requested to be seen by an outside specialist, to no avail. *Id.* at ¶ 32. Plaintiff was very sick on several occasions, prompting the unit officer to call the emergency unit of the medical department in FCI Ray Brook to attend to Plaintiff's severe abdominal pains. *Id.* at ¶ 33. From August 2000 until his transfer from FCI Ray Brook, he has submitted repeated sick call requests and filed several grievances requesting that tests be done by an outside medical specialist. *Id.* at ¶ 34.

After several years, Plaintiff still has not received care from an outside abdominal specialist. *Id.* at ¶ 37. Plaintiff suffers from great abdominal pain and cannot eat solid meals without throwing them up or passing bowels quickly thereafter. *Id.* at ¶ 38. In addition, Plaintiff was prescribed medications that caused him physical harm. *Id.* at ¶ 41. Plaintiff fears that if he is not promptly seen by an outside specialist, he risks the onset of a permanent disability. *Id.* at ¶ 39.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."*Bell. Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff."*Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999); *see also Smith*

*v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (citations omitted). Additionally, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6) ], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference ... and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference."*Green v. New York State Dep't of Corr. Servs.,* 2003 WL 22169779, at \*1 (N.D.N.Y. Aug.27, 2003) (internal quotation marks and citations omitted) (alterations in original).

Pleadings submitted by *pro se* litigants "should be 'construed liberally,' *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (per curiam)," and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations[,]' " *Phillips v. Girdich,* 408 F.3d 124, 127 (2d Cir.2005) (quoting *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997)). A "dismissal on the pleadings is never warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Phillips v. Girdich,* 408 F.3d at 128.

**\*4** Additionally, although a court considering a motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the complaint includes any written instrument attached to it as an exhibit and any statements or documents incorporated into it by reference. *Paulemon v. Tobin,* 30 F.3d 307, 308 (2d Cir.1994). The court may also consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had in [his] possession or had knowledge of and upon which [h]e relied in bringing this suit. *Cortec Indus. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (cited in *Mills v. Garvin,* 2001 WL 286784, at \*3 (S.D.N.Y. Mar.2, 2001)).

In this case, the Plaintiff has attached to his Amended Complaint copies of the April 2003 Incident Report and of his various administrative requests and appeals related to that Report and his removal from the UNICOR work program. [6] Am. Compl, Attachs. These attached documents shall be treated as exhibits and are incorporated into the Amended Complaint by reference.*Paulemon v. Tobin,* 30 F.3d at 308.

The moving Defendants have attached to their Motion the Declaration of Cheryl Magnusson, a legal assistant for the BOP, which itself has attached to it copies of documents retrieved through the BOP's computer database, known as "SENTRY." These documents include copies of Plaintiff's:

(1) Administrative Remedy Generalized Retrieval Screen, which is in sum and substance a list of all administrative remedies filed by Plaintiff including a brief description of the nature of each complaint; (2) Public Information Inmate Data; (3) History Work Detail; (4) Radiological Reports dated June 12, 2002, December 16, 2004, April 4, 2005, and May 23, June 12, and September 25, 2006; (5) Administrative Remedies related to his termination from UNICOR; and (6) Chronological Disciplinary Record. Dkt. No. 28, Mot. to Dismiss, Cheryl Magnusson Decl., dated Mar. 7, 2008, Exs. A–H.

With respect to the aforementioned documents attached to the Defendants' Motion, the Court will consider only documents related to Plaintiff's Administrative Remedies for the purposes of addressing the Defendants' Motion. Particularly with respect to the issue of exhaustion, it has been held that "an inmate plaintiff necessarily refers to and relies on documents exhibiting proof of exhaustion. Because the exhaustion issue is an integral part of a prisoner's claim, the Court may refer to materials outside of the complaint on a 12(b)(6) motion in determining whether a plaintiff exhausted." *Smart v. Goord,* 441 F.Supp.2d 631 (S.D.N.Y.2006) (citing cases). Moreover, Plaintiff alleges in his Amended Complaint that he has exhausted administrative remedies on all his claims, Am. Compl. at ¶ 17; therefore, documents related to exhaustion are "integral to [P]laintiff's claims" and can be considered by the Court, *Martinez v. Williams,* 186 F.Supp.2d 353, 355 (S.D.N.Y.2002) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46–48 (2d Cir.1991)).

## B. *Bivens* Claims

### 1. *Bivens* Standard

**\*5** *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents. See *Ellis v. Blum,* 643 F.2d 68, 84 (2d Cir.1981) (noting that a Bivens action is a judicially-created remedy); *see also Carlson v. Green,* 445 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). The only remedy available in a Bivens action is an award

for monetary damages from defendants in their individual capacities. See *Polanco v. United States Drug Enforcement Admin.,* 158 F.3d 647, 652 (2d Cir.1998). In order to state a Bivens claim, a plaintiff must allege a constitutional deprivation by defendants acting under color of federal law. *Soichet v. Toracinta,* 1995 WL 489434, at *3 (S.D.N.Y. Aug.16, 1995) (citing *Barbera v. Smith,* 654 F.Supp. 386, 390 (S.D.N.Y.1987)). Generally, case law under 42 U.S.C. § 1983 applies to *Bivens* cases. *Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir.1987) (quoting *Ellis v. Blum,* 643 F.2d at 84).

### 2. *Exhaustion*

Defendants assert that Plaintiff failed to exhaust his available administrative remedies regarding his allegation that Defendants were deliberately indifferent to his medical needs. The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), restricts inmates from bringing an action under federal law "with respect to prison conditions ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Plaintiffs properly exhaust their claims when they "compl[y] with the system's critical procedural rules." *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2388, 165 L.Ed.2d 368 (2006). Failure to exhaust must be plead as an affirmative defense, which the Defendants have done in this case. *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 918, 166 L.Ed.2d 798 (2007).

The United States Bureau of Prisons (BOP) has a three-tiered administrative remedy system. 28 C.F.R. §§ 542.13–542.15. At the first tier, an inmate must first present an issue informally to staff, the second requires an inmate to file a written remedy request with the Warden, and the third tier requires an inmate to file an appeal with the appropriate Regional Director and then with the General Counsel. *Id., see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007).

A review of the available records attached to Defendants' Motion reveals that Plaintiff has filed twenty-three administrative remedies during his incarceration with the BOP, though not one of them concerns his claims of medical indifference on the part of FCI RayBrook Staff. Magnusson Decl., Ex. D, Pl.'s Admin. Remedy Gen. Retrieval Screen.

**\*6** Therefore, it recommended that Plaintiff's medical indifference claims brought under *Bivens* be **dismissed** for failure to exhaust.[7]

### 3. *Removal from UNICOR*

#### a. *Due Process Claim*

Plaintiff alleges that he was denied due process because he was removed from his prison job with UNICOR after receiving a false incident report and never received a hearing on that report. Am. Compl. at ¶¶ 18–29 & 44. However, federal prisoners do not have a constitutionally protected liberty or property interest in participating in UNICOR. *See Onwuazombe v. Dodrill,* 2008 WL 1758641, at \*4 (S.D.N.Y. Apr.16, 2008) (citing *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49–50 (5th Cir.1995) for the proposition that prisoners do not have a constitutionally protected liberty or property interest in participating in UNICOR); *see also Karacsonyi v. Radloff,* 885 F.Supp. 368, 370 (N.D.N.Y.1995) (same). Therefore, Plaintiff had no due process right to a hearing before being removed from his position in UNICOR, and this claim should be **dismissed.**

#### b. *Retaliation*

Plaintiff alleges that the Defendants retaliated against him by filing a false Misbehavior Report that led to his termination from UNICOR. Am. Compl. at ¶¶ 43 & 53. Defendants have not addressed this claim, however, notwithstanding that omission, under 28 U.S.C. § 1915(e)(2)(B)(ii), this Court has the power to review Plaintiff's Complaint for failure to state a claim *at any time. See, e.g., Zimmerman v. Burge,* 2008 WL 850677, at \*7 (N.D.N.Y. Mar.28, 2008) (noting that "even where a defendant has not requested dismissal based on a failure of the plaintiff to state a claim upon which relief may be granted, a district court may, *sua sponte,* address whether a pro se prisoner has failed to state a claim[.]") (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted). Thus, there must be a "causal

connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

In this case, even assuming that Plaintiff's participation in UNICOR was constitutionally protected conduct and that the Defendants engaged in adverse actions against Plaintiff by removing him from UNICOR, Plaintiff has failed to allege any causal connection between his participation in UNICOR and the filing of the allegedly false Misbehavior Report. In other words, Plaintiff has failed to state any reason why the Defendants would be motivated to retaliate against him. Therefore, Plaintiff has failed to state a claim and it is recommended that his retaliation claim be **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

#### c. *False Misbehavior Report*

**\*7** To the extent Plaintiff intended to state an independent cause of action based on the Defendants' alleged filing of a false Misbehavior Report against him, that claim is also without merit because there is "no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)); *see also Gill v. Riddick,* 2005 WL 755745, at \*7 (N.D.N.Y. Mar.31, 2005). Therefore it is recommended that this claim be **dismissed.**

### 4. *Conspiracy Claims*

Plaintiff alleges that the Defendants conspired to file a false Misbehavior Report against him in order to have him removed from the UNICOR program, and conspired in failing to provide adequate medical care in violation of 42 U.S.C. § 1985. Am. Comp. at ¶¶ 43, 48–49 & p. 13. *Id.* at ¶¶ 48–49.

The third subsection of 42 U.S.C. § 1985, which is the only part of this statute applicable to the claims made in this case, states, in pertinent part:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ..., if

one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the Untied States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with "(3) an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999) (citations omitted). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dept. of Corr. Servs.,* 115 F.Supp.2d 307 (N.D.N.Y.2000) (citations omitted).

In this case, Plaintiff has failed to allege any racial or class-based invidious discriminatory animus on the part of the Defendants. Because the Amended Complaint is devoid of any allegation of racial or class-based animus, Plaintiff has failed to state viable § 1985 conspiracy claims. *See Lewis v. Goord,* 2008 WL 902179, at *3 (N.D.N.Y. Mar.31, 2008) (dismissing a § 1985 claim when Plaintiff failed to allege racial or class-based animus) (citation omitted). Therefore, it is recommended that Plaintiff's conspiracy claims under § 1985 be **dismissed**.

### C. FTCA Claim

**\*8** Plaintiff raises a negligence claim under the FTCA, 28 U.S.C. §§ 1346 and 2671 *et seq.,* with respect to the medical care he received. The FTCA constitutes a Government waiver of the defense of sovereign immunity in certain circumstances, but it does not itself create any causes of action. *See Dorking Genetics v. United States,* 76 F.3d 1261, 1266 (2d Cir.1996). Adopted by Congress in 1946, the FTCA gives federal district courts jurisdiction over civil actions against the United States for money damages over loss of property, personal injury, or death caused "by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"28 U.S.C. § 1346(b)(1). The Government can be held liable if "a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred."*Id.*

The FTCA does not waive the government's sovereign immunity for federal constitutional tort claims. *F.D.I.C. v. Meyer,* 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). As such, a valid claim under the FTCA must be based on the applicable state law where the act or omission occurred. *28 U.S.C. § 1346(b)* & *2674; Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1996). To the extent that Plaintiff brings an Eighth Amendment deliberate indifference claim under the FTCA, that claim must fail because the government has not waived its sovereign immunity against such a claim. Because the alleged acts and omissions giving rise to Plaintiff's negligence claim occurred at FCI Ray Brook, which is located in New York, we must apply New York law to analyze that tort claim. *Mortise v. United States,* 102 F.3d at 696.

"Under New York law ... a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof."*Alfaro v. Wal–Mart Stores, Inc.,* 210 F.3d 111, 114 (2d Cir.2000) (internal quotation marks and citations omitted).

By statute, the BOP has the duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence" of all inmates in its custody. 18 U.S.C. § 4042(a)(2); *see also United States v. Muniz,* 374 U.S. 150, 164–65, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (stating that the BOP's duty of care is fixed by 18 U.S.C. § 4042, not any state rule). The aforementioned statute creates a duty on the part of BOP to "exercise ordinary diligence or reasonable care to keep prisoners safe and free from harm."*Smith v. United States,* 207 F.Supp.2d 209, 214 (S.D.N.Y.2002) (internal quotation marks and citations omitted). Thus, the first element of Plaintiff's negligence claim has been established.

Proceeding to the second element, breach of duty, Plaintiff alleges that Defendants failed to provide adequate medical care for his abdominal pain, that he "has not received outside medical care from a abdominal/GI specialist ... [nor] treatment for his severe abdominal illness [ ] and physical therapy," and that he was prescribed medications that caused him physical harm. Am. Compl. at ¶¶ 37, 41–42, & 45. These claims are conclusory. Plaintiff has failed to provide any detail with respect to his medical need for a consultation with a specialist, and moreover, he admits to being seen by medical staff over fifty (50) times for his abdominal pain while at FCI Ray Brook. *Id.* at ¶ 31. Furthermore, Plaintiff does not make any specific allegations against any of the named Defendants regarding medical care. Although a claim under the FTCA is necessarily brought against the United States, Plaintiff must still allege that the negligent or wrongful acts or omissions of the Government's employees constituted a breach of their duty to "exercise ordinary diligence and reasonable care" on his behalf. *See Bell. Atl. Corp. v. Twombly,* 127 S.Ct. at 1958–9 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level"). Because Plaintiff has failed to do so, it is recommended that this claim be **dismissed.**

### D. Supervisory Liability Claims

**\*9** Plaintiff seeks supervisory liability against Defendants Michael Nally, Mickey E. Ray, D. Martin, Chester, and Roy, for their failure to enforce BOP policies. Am. Compl. at ¶¶ 55–65. Because we recommend that all of Plaintiff's underlying claims be dismissed, there is no basis upon which to hold these Defendants liable under a theory of supervisory liability. Therefore, it is recommended that Plaintiff's supervisory liability claims be **dismissed.**

### E. Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m). [8] Failure to properly serve any defendant in accordance with

the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

In this case, there is no indication that the Defendants Michael Nally, Chester, Sullivan, Rex Daschle, Lepo, Roy, E. Sweatt, D. Martin, and USA were properly served. Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims lack merit, granting Plaintiff the opportunity to properly serve these unnamed Defendants would be futile. Thus, it is recommended that Plaintiff's claims against these Defendants be **dismissed.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Defendants' Motion to Dismiss (Dkt. No. 28) be **granted,** and the Amended Complaint (Dkt. No. 5) be **dismissed;** and it is further

**RECOMMENDED,** that Plaintiff's retaliation claim be dismissed, *sua sponte,* pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also*28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

### All Citations

Not Reported in F.Supp.2d, 2009 WL 1044595

Footnotes

1    UNICOR Industries, Inc., is a corporation that provides voluntary work opportunities for federal prison inmates. Information available at www.unicor.gov.

2    Plaintiff also makes reference to 18 U.S.C. §§ 241, 242 (criminal statutes) & 4013(a)(2) (which gives the United States Attorney General authorization to make payments from funds appropriated for Federal prisoner detention for medical care and necessary guard hire). These statutes are not applicable to Plaintiff's civil claims and will be disregarded by the Court.

3    Defendants Michael Nally, Chester, Sullivan, Rex Daschle, Lepo, Roy, E. Sweatt, D. Martin, and USA have not been served with process. *See generally* Dkt. Rep. We discuss this issue in Part II.E, *infra.*

4    Debra Wilcox is not a named Defendant in this action.

5    Plaintiff alleges the events described above occurred on or about April 23, 2003, however, the allegedly false Incident Report is dated April 22, 2003. For the purposes of this Motion, it matters not whether the events described in the Amended Complaint occurred on April 22 or 23, 2003.

6    Plaintiff has also attached a copy of the callout list or "Change Sheet," which informed him that his employment at UNICOR had been changed, and a letter from the Federal Bureau of Prisons offering a settlement regarding his Administrative Tort Claims of wrongful termination and denial of proper medical treatment. Am. Compl., Attachs., Change Sheet, dated Apr. 23, 2003 & Settlement Lt. from BOP, dated Apr. 8, 2004.

7    Were Plaintiff to have opposed the Defendants' affirmative defense of failure to exhaust, we would have inquired as to whether: (1) administrative remedies were available to Plaintiff; (2) defendants have forfeited this affirmative defense by failing to raise or preserve it, or if the defendants should be estopped from asserting failure to exhaust because they somehow inhibited the inmates' exhaustion; and (3) any special circumstances exist that could justify Plaintiff's failure to properly exhaust. *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). However, because Plaintiff failed to respond to the Defendants' Motion, no such inquiries are necessary. *Id.* (stating that three step inquiry is necessary only "where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies").

8    Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L .R. 4.1(b).

**End of Document**       © 2015 Thomson Reuters. No claim to original U.S. Government Works.